OPINION OF THE COURT
Thomas A. Dickerson, J.
The First Decision
On March 16, 1998 this court denied the application of the plaintiff, Hilary B. Miller (Miller), an attorney admitted to practice law in Connecticut and New York, for the “Entry Of Default Judgment” against the defendant, Kevin J. Corbett (Corbett), a former client and resident of the City of Yonkers, New York (Miller Decision No. 1).* The application was based upon Corbett’s failure to file an answer to Miller’s endorsed complaint seeking $8,278.77 for “legal services rendered” of a matrimonial nature (see, exhibit A to affidavit of Hilary B. Miller, sworn to Jan. 8, 1998 [Miller Aff. I] [“Invoice Re: Matrimonial”]; compare, letter of Kevin J. Corbett, dated Apr. 22, 1998, to court [“Mr. Miller’s involvement in the Family Court matter was far more substantial than he claims”] [Corbett Opp.]).
The Grounds For Miller Decision No. 1
The grounds for denying Miller’s application were twofold. First, the court found that, based upon the papers submitted, Miller did not “maintain an office in New York State” (Miller v Corbett, supra, at 35, col 5) and, hence, violated Judiciary Law § 470 (supra, at 35, col 5 [“In essence, Miller has violated Judiciary Law § 470 twice, first, when (he) rendered legal services on behalf of Corbett, and second, when (he) filed the Miller Aff. seeking a default Judgment against Corbett”]). Second, the court found that Miller failed to comply with part 136 of the Rules of the Chief Administrator of the Courts (22 NYCRR) by giving Corbett an opportunity to request fee arbitration before commencing this lawsuit (supra, at 35, col 5 [“Section 136.5(a) provides that ‘Where an attorney and client cannot agree as to the attorneys fee, the attorney shall inform the client in writing * * * that he or she has 30 days * * * to elect to resolve the dispute by arbitration * * *’. Section 136.5(c) provides that ‘An attorney who institutes an action to recover a fee *268 must allege in the complaint that the client received notice under this rule of his or her right to pursue arbitration and did not file a timely request for arbitration’ ”]).
Sanctions
In addition to denying the application for a default judgment the court also imposed sanctions of $250 upon Miller pursuant to part 130, subpart 130-1 of the Rules of the Chief Administrator of the Courts (22 NYCRR) (Miller v Corbett, supra, at 35, col 5 [“The Court finds that Miller’s rendering of legal services to Corbett in the first instance and the subsequent filing of the Miller Aif. in this proceeding violated Judiciary Law § 470 and were frivolous. In addition, Miller’s failure to comply with Sections 136.5(a), (c) of the Rules of Chief Administrator were equally frivolous”]).
The Motion To Renew & Reargue
On March 26, 1998 Miller, by way of his attorney, Kenneth David Burrows of 425 Park Avenue, New York, New York, filed a motion seeking “leave to renew and reargue”, and upon such renewal and reargument, an order vacating Miller Decision No. 1 and granting the relief previously requested (Motion To Renew & Reargue). In support of the Motion To Renew & Reargue Miller submitted an affidavit sworn to March 25, 1998 (Miller Aif. II). The Motion To Renew & Reargue was set down for oral argument on April 23, 1998.
Corbett’s “Opposition”
On April 22, 1998 Corbett faxed to this court a three-page, unsworn letter together with several attachments challenging some of the assertions in the Miller Aff. II (Corbett Opp.), charging Miller with “unprofessional conduct” and requesting arbitration of his fee dispute with Miller (“Just as I could not afford to pay Mr. Miller I could not afford an attorney to fight his lawsuit. Had I been aware that Arbitration was an' option I would certainly have sought this means of resolving the matter between us”).
Oral Argument
On April 23, 1998 Miller and his attorney appeared before this court and orally argued the Motion To Renew & Reargue. Corbett did not appear. The court informed Miller of its receipt of the Corbett Opp. and suggested that Miller respond to the assertions and charges therein. The court also requested a *269 memorandum of law on the issue of whether the underlying fee dispute is subject to fee arbitration under part 136 of the Rules of the Chief Administrator of the Courts. On May 8, 1998 Miller submitted a memorandum of law dated May 7, 1998 (Miller Memo.), a supplemental affidavit of Hilary B. Miller sworn to May 7,1998 (Miller Aff. Ill) and a supplemental affidavit of Allen I. Scherl sworn to May 2, 1998 (Scherl Aff.).
The Motion To Renew & Reargue Is Granted In Part
After careful consideration the court hereby grants Miller’s Motion To Renew & Reargue his application for a default judgment against Corbett, and upon such renewal and reargument, vacates that portion of Miller Decision No. 1 which (1) found that Miller violated Judiciary Law § 470, and (2) imposed sanctions of $250 against Miller pursuant to part 130, subpart 130-1 of the Rules of the Chief Administrator of the Courts. The court, however, adheres to its original finding that Miller violated part 136, section 136.5 (a) and (c) of the Rules of the Chief Administrator of the Courts by failing to give Corbett an opportunity to have the instant fee dispute arbitrated. Miller’s lawsuit against Corbett is dismissed without prejudice to refiling once Miller has demonstrated full compliance with the applicable Rules of the Chief Administrator of the Courts.
Judiciary Law § 470
Regarding the court’s finding that Miller did not “maintain an office in New York State” Miller has introduced the following new facts: (1) Miller has maintained “bona fide office space and a desk for my use at 4 Grand Park Avenue, Scarsdale, New York” (Miller Aff. I para 6) owned and provided to Miller by Allen I. Scherl (“A desk and telephone within the office are set aside solely for the use of Mr. Miller and have been used exclusively by him at all times since 1991. I have been a client of Mr. Miller’s for 15 years * * * Mr. Miller receives no fee for these stated services but * * * has been provided the use of the * * * desk and telephone facilities, gratis * * * Mr. Miller is present at the premises on a regular basis * * * has telephone service at [914] 673-6341 * * * receives calls in person or by voicemail [answered in his name]” [Scherl Aff. paras 2-4]); (2) Miller is also of counsel to Kenneth David Burrows, Esq., 425 Park Avenue, New York, New York 10022 and is “provided with office facilities and the ability to be served with papers” thereat (Miller Aff. I para 7); and (3) Miller has registered with the Office of Court Administration and *270 designated “The Scarsdale address” as the location of his office in New York State (Miller Aíf. I para 9).
Upon these new facts it would appear that Miller is complying with Judiciary Law § 470 (see, e.g., Matter of Scarsella, 195 AD2d 513, 515-516 [1993] [“However, he maintains a desk in an office located in Manhattan. He has a telephone there, but at the time of the trial the number was not listed in the New York telephone directory. He shared the office with a realty company, and there is a secretary there who, even though not on his payroll, is available to him”]; Rosenshein v Ernstoff, 176 AD2d 686 [1991]; Austria v Shaw, 143 Misc 2d 970, 971-972 [1989] [“Nothing in the statute states the size or type of office required to be maintained. Specifically, a rental of desk space, with a telephone which is answered * * * suffices. Neither the telephone nor the desk need be exclusively that of the attorney * * * telephone messages or calls to the attorney were answered and forwarded to the attorney. Mail was apparently forwarded to the attorney”], affd 188 AD2d 271 [1992]).
The Policy Underlying Fee Arbitration
The fee arbitration rule is one of several procedures, “remedial in nature” (Lewis & Merritt v Smith, 170 Misc 2d 192, 194 [1996]), developed in recent years to help consumers of matrimonial legal services, “in an area of practice inherently [fraught] with tension and stress” (Lewis & Merritt v Smith, supra, at 194) while at the same time improving the public’s perception of the legal profession and the judiciary (see, e.g., S.M. v A.L.G., NYLJ, Sept. 24, 1993, at 27, col 5 [Just Ct] [“th(e) Court is * * * mindful of the need for the public to have confidence in attorneys and the legal system”]; L.H. v V.W., 171 Misc 2d 120, 124, 125 [1996] [“One clear purpose of the rules is to provide a streamlined extrajudicial mechanism for the resolution of fee disputes in matrimonial representation” “The * * * rules were passed to counter the public’s perception of attorneys”]; Silberman, An Assessment of the First Three Years of the “New” Matrimonial Practice Rules, NYLJ, Dec. 30, 1996, at 1, col 1 [“The matrimonial rules * * * sought to improve the attorney-client relationship and the handling of matrimonial * * * matters by the courts”]).
Fee Arbitration Is Appropriate
Because of the salutary and remedial nature of the fee arbitration rule it must be interpreted expansively (see, e.g., *271 Miller Aff. II para 21 [“While it could be argued that Part 136 should be read expansively to include representation in any family-law matter”]), particularly, where the client, as herein, has informed the court that he desires fee arbitration (Corbett Opp. [“Had I been aware that Arbitration was an option I would certainly have sought this means of resolving the matter between us”). The legal services rendered by Miller were of a matrimonial nature and there is a dispute over the nature, quality and value of the matrimonial legal services rendered by Miller (Corbett Opp. [“Mr. Miller claims that he did not represent me in the Family Court Proceeding * * * Mr. Miller’s involvement in the Family Court matter was far more substantial than he claims * * * Mr. Miller was in fact representing me in the Family Court matter * * * Mr. Miller refused pointblank to appear in court with me * * * although I did not formally protest Mr. Miller’s fee, I did on two separate occasions let him know in writing that I felt the amount excessive * * * as well as several other examples of unprofessional conduct * * * were what caused me to discharge him”]). Although Miller disputes Corbett’s charges (Miller Aff. Ill; Miller Memo., at 7-16) and attempts to cast doubt on Corbett’s motives (Miller Memo., at 16-17 [“Corbett now offers ***(*** no bona fide defense on the merits) * * * merely states— conveniently and very belatedly — that he would have pursued arbitration had it been offered to him”]), it is not the function of this court, in the first instance, to decide the merits of Miller’s claims or Corbett’s defenses (Lewis & Merritt v Smith, supra, at 194 [“To do so in this court’s opinion would effectively emasculate the fee arbitration rules governing domestic relations matters”]).
Fee Arbitration Does Not Prejudice Miller
There is no prejudice to Miller in requiring, as a condition precedent to filing the instant lawsuit, that he give Corbett an opportunity to request fee arbitration. Miller will have a full and fair opportunity to have his claims against Corbett resolved either through the arbitration process in the first instance or before this court after the applicable Rules of the Chief Administrator of the Courts have been complied with.
Complaint dismissed without prejudice.

 Miller v Corbett, NYLJ, Apr. 2, 1998, at 35, col 4 (Yonkers City Ct) (“A Connecticut Attorney in a Yonkers Court”).